Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2024-0326

_____

**Ex parte Jefferson County Department of Human Resources**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: In the matter of C.M.)**

**(Chilton Juvenile Court: JU-24-47.01)**

COLE, Judge.

The Jefferson County Department of Human Resources ("the Jefferson County DHR") appeals the Chilton Juvenile Court's "detention/shelter-care" order requiring it to reimburse the Chilton County Commission $85 per day for C.M.'s detention before the final adjudication of the delinquency charges lodged against her.

## I.    Facts and Procedural History

On March 20, 2024, a delinquency petition was filed in Chilton Juvenile Court, alleging that C.M. "shoved" a teacher in Verbena High School in Chilton County, in violation of § 13A-11-8(a), Ala. Code 1975. (C. 5.)  A pickup order was issued that day to place C.M. in the immediate custody of the Montgomery County Detention Facility, based on the juvenile court's findings that C.M. had "no parent, legal guardian, legal custodian, or other suitable person able to provide supervision and care" and that "release … would present a serious threat of substantial harm to" C.M.  (C. 6.)[1]  On March 21, 2024, the juvenile court issued a detention/shelter-care order that required the Jefferson County DHR to reimburse the Chilton County Commission $85 per day for C.M.'s detention.[2]  (C. 7.)

---

[1]On April 3, 2024, the juvenile court ordered C.M. be "released to a representative of Chilton County Department of Human Resources."  (C. 17.)

[2]There is no transcript from the juvenile-court hearing.  However, it appears from the record that the Jefferson County DHR had placed C.M. in foster care in Chilton County at some point before the delinquency petition was filed.  (C. 9.)

On April 2, 2024, after learning of that order, the Jefferson County DHR moved the juvenile court to "alter, amend, or vacate" the provision regarding its reimbursement of the Chilton County Commission for C.M.'s detention fees, arguing that, under Alabama law, all expenses of maintenance and care of children shall be paid by the county treasurer, not by a state agency. (C. 8-16.) The Jefferson County DHR further contended that the Chilton County Commission was financially responsible for the cost of C.M.'s detention. (C. 10.) The Jefferson County DHR also argued that it was not a "parent" or "other person" legally obligated to care for and support C.M. under § 12-15-109, Ala. Code 1975, and, moreover, that it was not made a party to the delinquency proceeding or provided a hearing, as required by the statute. (C. 10-11.) In addition, the Jefferson County DHR argued that the juvenile court's order violated the separation-of-powers doctrine, and it asked the court to either vacate the part of the order requiring it to reimburse the Chilton County Commission or schedule a hearing on the matter. (C. 12-15.) A hearing was held on the Jefferson County DHR's motion to vacate, and the motion was denied on April 11, 2024. (C. 25.)

On April 25, 2024, C.M. admitted to the allegations in the delinquency petition, and she was adjudicated delinquent. The juvenile court committed her to the Alabama Department of Youth Services, but the commitment was suspended with conditions. (C. 26-30.) C.M. did not appeal her delinquency adjudication. The same day, the Jefferson County DHR timely filed a notice of appeal, "appealing" the juvenile court's March 21, 2024, order that required it to reimburse the Chilton County Commission $85 per day for C.M.'s detention ("the reimbursement order"). (C. 34.)

## II. Analysis

The Jefferson County DHR continues to argue that the juvenile court did not have authority to require it to reimburse the Chilton County Commission for C.M.'s detention fees. Before addressing the merits of this argument, however, we must first determine whether this Court has jurisdiction over this matter and whether the Jefferson County DHR's "appeal" should be treated as a petition for a writ of mandamus.

### A. Jurisdiction

Article VI, § 141(d), of the Alabama Constitution of 2022, provides that "[t]he court of criminal appeals shall have and exercise original

4

jurisdiction in the issuance and determination of writs of quo warranto and mandamus <u>in relation to matters in which said court has appellate jurisdiction</u>." (Emphasis added.) That jurisdiction is also mandated by statute. <u>See</u> § 12-3-11, Ala. Code 1975 ("Each of the courts of appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus <u>in relation to matters in which said court has appellate jurisdiction</u>." (emphasis added)).

Section 12-15-601, Ala. Code 1975, provides that "[a] party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court proceeding pursuant to [Title 12, Chapter 15, Ala. Code 1975]. The procedure for appealing these cases shall be pursuant to rules of procedure adopted by the Supreme Court of Alabama."

Rule 28(A)(2), Ala. R. Juv. P., provides:

"If the appeal provided in this subsection is taken from a final order or judgment in a case or proceeding arising out of the jurisdiction of the juvenile court over a child …, <u>the appropriate appellate court for purposes of the appeal shall be (a) the Court of Criminal Appeals in proceedings in which a child is adjudicated delinquent</u>, proceedings to revoke probation or aftercare in delinquency cases, and proceedings in which a motion seeking an order to transfer a case of a child

5

to the adult court for criminal prosecution is either granted or denied, and (b) the Court of Civil Appeals in any other case or proceeding."

(Emphasis added.)

Thus, according to the Alabama Constitution, the pertinent statute, and pertinent rule, if the proceedings made the subject of an appeal are related to matters in which the Court of Criminal Appeals has appellate jurisdiction, jurisdiction lies in this Court. Because the issue raised here -- challenging the juvenile court's reimbursement order regarding C.M.'s detention pending her delinquency adjudication -- arose directly from a delinquency proceeding, this Court has jurisdiction over this matter. As the Alabama Supreme Court explained in Hutchinson v. State, 66 So. 3d 220, 231 (Ala. 2010),

> "when it comes to a matter relating to a criminal case [here, a delinquency proceeding], whether it be an issue arising before trial, such as one regarding discovery, or an issue arising only after the entry of a final judgment, such as one regarding a criminal defense counsel's fee application, it is the Court of Criminal Appeals that, in all common sense and logic, should decide the question."

In sum, C.M.'s detention, and the reimbursement order, were matters related to and precipitated by C.M.'s delinquency proceeding, over which this Court has exclusive jurisdiction. Thus, this matter is

6

properly reviewed by this Court.  See Ex parte State Dep't of Hum. Res., 621 So. 2d 406, 406-07 (Ala. Crim. App. 1993) (issuing a writ of mandamus because "an order of the trial court placing the financial responsibility for the maintenance and care of the [delinquent] child on a department of the state instead of on the county violates the provisions of Ala. Code 1975, § 12-15-10").

## B.    Appeal or Mandamus

We must next determine whether an "appeal" is the proper avenue for the Jefferson County DHR to challenge the juvenile court's reimbursement order.  This Court has only rarely treated a notice of appeal as a petition for a writ of mandamus.  However, we have discretion under the Alabama Rules of Appellate Procedure to do so, and we hold that exceptional circumstances justify our treatment of this "appeal" as a petition for a writ of mandamus. See, e.g., Ex parte Butler, 295 So. 3d 1115, 1117 (Ala. Crim. App. 2019).  We have, thus, restyled this matter accordingly.

First, a petition for a writ of mandamus is the proper vehicle for challenging an interlocutory order.  The Alabama Supreme Court

7

explained the difference between an interlocutory order and a final judgment in Ex parte Ferrari, 171 So. 3d 631, 637 (Ala. 2015), as follows.

> "'"An appeal will ordinarily lie only from a final judgment; that is, a judgment that conclusively determines the issues before the court and ascertains and declares the rights of the parties."' Hamilton ex rel. Slate-Hamilton v. Connally, 959 So. 2d 640, 642 (Ala. 2006) (quoting Palughi v. Dow, 659 So. 2d 112, 113 (Ala. 1995)). In contrast, an interlocutory judgment is '[a]n intermediate judgment that determines a preliminary or subordinate point or plea but does not finally decide the case.' Black's Law Dictionary 971 (10th ed. 2014)."

The Jefferson County DHR is challenging the juvenile court's March 21, 2024, reimbursement order, which required the Jefferson County DHR to reimburse the Chilton County Commission $85 per day for C.M.'s detention. That order was issued before C.M.'s juvenile-delinquency adjudication and is an interlocutory order. The juvenile court's final ruling, adjudicating C.M. delinquent and committing her to the Department of Youth Services, is not being challenged by either C.M. or the Jefferson County DHR.

Second, because the Jefferson County DHR is not a "part[y] to the underlying action, [it] ha[s] no right of appeal or adequate remedy other than a writ of mandamus." Ex parte Baggett, 297 So. 3d 1168, 1176 (Ala. 2019) (citing Mars Hill Baptist Church of Anniston, Alabama, Inc. v.

8

<u>Mars Hill Missionary Baptist Church</u>, 761 So. 2d 975, 980 (Ala. 1999)) (recognizing that a party does not have standing to appeal a judgment unless the party is also a party to the judgment).

Third, "orders of the kind entered [here] are subject to mandamus review." <u>See, e.g.</u>, <u>Ex parte Department of Hum. Res.</u>, 620 So. 2d 619, 619-20 (Ala. 1993) (recognizing that the argument that a juvenile court "had no legal authority" to require State funds to be used to pay for the treatment of a delinquent child was an order appropriate for mandamus review and issuing the writ because the juvenile court's order "violated § 12-15-10[, Ala. Code 1975,[3]] by placing the financial responsibility for the maintenance and care of the child on a department of the state instead of on the county") In short, "a writ of mandamus is the proper method

_____

[3]Section 12-15-10 was amended and renumbered by Act No. 2008-277, § 1, Ala. Acts 2008, effective January 1, 2009." Although some wording changed, both statutes hold the county responsible for the "maintenance and care of children" under the juvenile court's jurisdiction. Section 12-15-10 made the county responsible for "all expenses of maintenance and care of children that may be incurred by order of the [juvenile] court in carrying out the provisions and intent of [the former Alabama Juvenile Justice Act]." Section 12-15-108 continues to hold the county responsible for "all expenses of maintenance and care of children under the jurisdiction of the juvenile court pursuant to [the current Alabama Juvenile Justice Act]."

for vacating an order that a trial court had no authority to enter." Alabama Dep't of Mental Health & Mental Retardation v. State, 718 So. 2d 74, 75 (Ala. Civ. App. 1998) (citing Ex parte Department of Hum. Res., 620 So. 2d 619 (Ala. 1993); Ex parte Department of Hum. Res., 553 So. 2d 1159 (Ala. Civ. App. 1989); and Ex parte State Dep't of Mental Health & Mental Retardation, 555 So. 2d 1132 (Ala. Civ. App. 1989)). See also Ex parte State Dep't of Hum. Res., 621 So. 2d at 407 (issuing a writ of mandamus because a juvenile court's order "placing the financial responsibility for the maintenance and care of the [delinquent] child on a department of the state instead of on the county violates the provisions of Ala. Code 1975, § 12-15-10").

We thus conclude that the proper method for the Jefferson County DHR to challenge the juvenile court's reimbursement order was to file a petition for a writ of mandamus. "For the purpose of judicial economy, we will treat this appeal as a petition for a writ of mandamus." Alabama Dep't of Mental Health & Mental Retardation, 718 So. 2d at 75. See also Butler, supra, and Rule 1, Ala. R. App. P. ("[These rules] shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits.").

C.    Timeliness

The reimbursement order was issued by the juvenile court on March 21, 2024. After becoming aware of that order, the Jefferson County DHR, which was not a party to the delinquency proceeding, filed a motion to "alter, amend, or vacate" the court's reimbursement order 12 days later, on April 2, 2024, which the juvenile court denied on April 11, 2024. The Jefferson County DHR then filed its notice of appeal, 14 days later, on April 25, 2024. That filing, which we are treating as a petition for a writ of mandamus, was filed (14 days after the entry of the juvenile court's order denying the motion to vacate and 35 days after the entry of the juvenile court's initial reimbursement order. Because the "appeal" was not filed within 14 days of the entry of the juvenile court's initial reimbursement order, it is unclear whether it was filed within a "presumptively reasonable" time. See Rule 21(a)(3), Ala. R. App. P. ("The petition shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal."), and Rule 28(D), Ala. R. Juv. P. ("Written notice of appeal shall be filed within 14 days of the date of the entry of order or judgment

11

appealed from, whether the appeal is to an appellate court or to the circuit court for trial de novo.").

We question whether the 14-day period began to run after the entry of the juvenile court's initial reimbursement order or after the court's denial of the motion to vacate. Indeed, it is unclear how the Jefferson County DHR could have satisfied the requirements for mandamus relief -- that there be an "imperative duty upon the respondent to perform, accompanied by a refusal to do so"[4] -- without first presenting its argument that the juvenile court was without authority to order it to reimburse the Chilton County Commission and the juvenile court then refusing to vacate its reimbursement order. In other words, the requirements for mandamus relief could not be satisfied, and the 14 days could not begin to run, until the court denied the Jefferson County DHR's motion to vacate. Nonetheless, we recognize that, in Ex parte Troutman Sanders, LLP, 866 So. 2d 547, 550 (Ala. 2003), the Alabama Supreme Court held that the "motion to reconsider" the trial court's denial of a motion to dismiss the claims of nonresident plaintiffs did not toll the time

---

[4]Ex parte Department of Hum. Res., 620 So. 2d at 619-20.

for filing a petition for a writ of mandamus. See also Ex parte P.G., [Ms. CL-2024-0942, March 14, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) (holding that "the filing of the motion to reconsider [the interlocutory order] … did not toll the time for the filing of a writ of mandamus"). However, even if the time for the Jefferson County DHR to file a petition began to run after the entry of the juvenile court's initial reimbursement order (rather than from the denial of the motion to vacate), the circumstances here are decidedly different than those presented in Troutman in that there is good cause for any untimeliness.

First, although the reimbursement order entered by the juvenile court indicated that an unknown representative of "DHR" was present with C.M. when the court issued its order on March 21, 2024 (C. 7), the Jefferson County DHR was not even a party to the delinquency proceeding, and it was not provided a hearing on the issue of reimbursement until filing its motion to vacate. Second, Rule 21(a)(3), Ala. R. App. P., expressly provides: "If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively

13

reasonable time." In <u>Troutman</u>, there was "<u>no</u> explanation for [the] failure to file the petition within a presumptively reasonable time." 866 So. 2d at 550 (emphasis added). By contrast, the procedural circumstances outlined by the Jefferson County DHR provided good cause for any delay in its brief to this Court. (<u>See</u> Jefferson County DHR's brief, p. 12) ("The juvenile court lacked the authority to require the Jefferson County DHR, which was a non-party to the delinquency action and was not provided notice of the hearing and an opportunity to be heard.") Finally, notice and the opportunity to be heard are prerequisites of a fair and functioning justice system.[5] Thus, the Alabama Court of Civil Appeals has addressed the merits of an untimely mandamus petition when a challenge to an interlocutory order is made "on the basis that it was entered without notice and the opportunity to be heard." <u>Ex parte P.G.</u>, ___ So. 3d at ___ (quoting <u>Ex parte M.F.B.</u>, 228 So. 3d 460, 462 (Ala. Civ. App. 2017)).

---

[5]In juvenile cases, for example, Alabama law provides that a protection or restraint order may be issued to nonparties, but only after notice and a hearing. §§ 12-15-139 & 12-15-140, Ala. Code 1975. Orders requiring the payment of temporary support to a child subject to a juvenile-court proceeding are among those that require such notice and a hearing. § 12-15-140(b)(10), Ala. Code 1975.

In sum, based on these unique circumstances, even if the filing was untimely, "good cause" has been shown for this Court to consider the merits of the Jefferson County DHR's petition.

### D.   Writ of Mandamus

The Jefferson County DHR contends that the juvenile court had no legal authority to require that its funds be used to reimburse the Chilton County Commission for C.M.'s detention costs while she awaited the adjudication of her delinquency petition.  We agree and issue the writ.

> "Mandamus is an extraordinary writ that will issue only when the following four requirements are met: 1) there is a clear legal right in the petitioner to the relief sought; 2) there is an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) there is no adequate remedy at law; and 4) the jurisdiction of the court is properly invoked."

Ex parte Department of Hum. Res., 620 So. 2d at 619-20.

Section 12-15-108, Ala. Code 1975, provides:

> "Except as otherwise provided in this chapter [i.e., Title 12, Chapter 15, Ala. Code 1975], all expenses necessary or appropriate to the carrying out of the purposes and intent of this chapter and all expenses of maintenance and care of children under the jurisdiction of the juvenile court pursuant to this chapter that may be incurred by order of the juvenile court in carrying out the provisions and intent of this chapter (except costs paid by parents, legal guardians, legal custodians, or trustees and court costs as provided by law) shall be valid charges and preferred claims against the

15

county. These claims shall be paid by the county treasurer when itemized and sworn to by the creditor or other persons knowing the facts in the case and when approved by the juvenile court."

The Legislature has, thus, expressly designated the "county" as the entity responsible for maintenance and care of a juvenile under the juvenile court's jurisdiction. Moreover, Article IV, § 88, of the Alabama Constitution of 2022, states that "[i]t shall be the duty of the legislature to require the several counties of this state to make adequate provision for the maintenance of the poor." Therefore, according to our statutory scheme and state constitution, the county, not the State or any department thereof, is responsible for expenses incurred by C.M. while in detention. It is clear that "[t]he county departments of human resources are state agencies" and "'serve as agents of the State Department of Human Resources.'" M.G. v. State Dep't of Hum. Res., 44 So. 3d 1100, 1101 n.1 (Ala. Civ. App. 2010) (quoting State Dep't of Hum. Res. v. Estate of Harris, 857 So. 2d 818, 819 n.1 (Ala. Civ. App. 2002)).

This Court recognizes that § 12-15-109, Ala. Code 1975, provides a means for assessing the cost of "examination, treatment, care, detention, or support of the child" and authorizes "making a parent, or other person legally obligated to care for and support a child, a party to the action …

16

and after a hearing, … order[ing] them to pay the same." Section 12-15-109 also provides that, "[i]f the child shall have an estate in the hands of a legal guardian, conservator, or trustee, the legal guardian, conservator, or trustee may be required to pay in a like manner." However, "[n]either of these [provisions] would appear to apply in this case." Ex parte Department of Hum. Res., 620 So. 2d at 620. "When the Legislature refers to 'persons' in this statute it is referring to 'real' persons -- people -- and not hospitals or institutions" or state agencies like the Jefferson County DHR. Ex parte Department of Mental Health, 511 So. 2d 181, 183 (Ala. 1987).[6] Likewise, the Court of Civil Appeals has held that "DHR ordinarily would not be treated as a 'person' entitled to the due-process protections of the Fourteenth Amendment." Limestone Cnty. Dept of Hum. Res. v. Long, 182 So. 3d 541, 545 (Ala. Civ. App. 2014). Moreover, there is no indication in the materials before this Court that a hearing occurred in accordance with § 12-15-109, Ala. Code 1975, before the

---

[6]The statute the Supreme Court referred to in Ex parte Department of Mental Health, former § 12-15-9, Ala. Code 1975, was amended and renumbered by Act No. 2008-277 as § 12-15-109; the current statute, like the former statute, provides a means of holding a "parent" or "other person" financially responsible for expenses related to a child under the jurisdiction of a juvenile court.

17

juvenile court issued the reimbursement order. Indeed, the Jefferson County DHR argued below and before this Court that no hearing occurred before the juvenile court entered its reimbursement order. (C. 11; Jefferson County DHR's brief, p. 13.)

We also note, as the Jefferson County DHR further contends, that the juvenile court's reimbursement order, requiring the Jefferson County DHR to reimburse the county in contravention of both the Alabama Constitution and the statutory scheme, violates the separation-of-powers doctrine. Both the Alabama Constitution and the Legislature require the appropriate <u>county</u> to pay the expenses for the maintenance and care of juveniles like C.M. "The Legislature's power to determine the appropriations for each state agency cannot be usurped by either of the other branches of government." <u>Ex parte Department of Mental Health</u>, 511 So. 2d at 183 (issuing a writ of mandamus to reverse an order directing the department to pay for the care and treatment of a juvenile because the county, not a state agency, is "responsible for any monies" and, thus, the order violated the statutory scheme and "the doctrine of separation of powers").

18

In sum, we hold that the juvenile court had no legal authority to require the Jefferson County DHR, a state agency, to reimburse the Chilton County Commission for C.M.'s detention expenses.[7] According to the Alabama Constitution, the pertinent statutory scheme, and a wealth of caselaw, "the county" is responsible for any expenses incurred by C.M. And, these claims "shall be paid by the county treasurer," according to § 12-15-108. As the Jefferson County DHR contends, Chilton County is required to pay for the "maintenance and care" expenses incurred during C.M.'s detention.

We further note that the juvenile court has not lost jurisdiction to vacate its order requiring the Jefferson County DHR to reimburse the Chilton County Commission. Generally, "in the absence of a stay, a trial court loses jurisdiction to modify or vacate its order after 30 days, and the issue before the appellate court becomes moot." State v. Cantrell, 295 So. 3d 140, 143 (Ala. Crim. App. 2019). Here, although the Jefferson County DHR was denied a stay below and did not request a stay from

---

[7]See, e.g., Ex parte State Dep't of Hum. Res., 716 So. 2d 717, 718 (Ala. Civ. App. 1998) (holding that "the juvenile court did not have the authority to order the Elmore County DHR, a state agency, to pay the medical bill in question").

this Court, the juvenile court has not lost jurisdiction while this petition has been pending. Under § 12-15-117, Ala. Code 1975, a juvenile court retains jurisdiction until the juvenile "becomes 21 years of age unless" jurisdiction is terminated sooner by a written order. See § 12-15-117(a) ("Once a child has been adjudicated dependent, delinquent, or in need of supervision, jurisdiction of the juvenile court shall terminate when the child becomes 21 years of age, unless, prior thereto, the judge of the juvenile court terminates its jurisdiction by explicitly stating in a written order that it is terminating jurisdiction over the case involving the child."). Moreover,

> "[i]n any case over which the juvenile court has jurisdiction, the juvenile court shall retain jurisdiction over an individual of any age to enforce or modify any prior orders of the juvenile court unless otherwise provided by law and shall also retain jurisdiction for the enforcement or modification of any prior orders of the juvenile court requiring the payment of fines, court costs, restitution, or other money ordered by the juvenile court until paid in full."

§ 12-15-117(c). Thus, the juvenile court retains jurisdiction to modify the reimbursement order.

## III.   Conclusion

Because the juvenile court acted beyond its authority, we grant the Jefferson County DHR's petition for a writ of mandamus, and we instruct

the juvenile court to vacate its order requiring the Jefferson County DHR to reimburse the Chilton County Commission $85 per day for C.M.'s detention.

PETITION GRANTED; WRIT ISSUED.

Kellum and Anderson, JJ., concur. Windom, P.J., and Minor, J., concur in the result.